IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In Re:

CS Estate Inc.,

(Chapter 11)

Debtor.

Case No. 15-13766

MEMORANDUM DECISION

Debtor, CS Estate, Inc. (CS), filed an objection to the claim of creditor Houlihan Lokey Capital, Inc. (Houlihan). After a preliminary hearing, the parties filed a stipulation requesting a ruling as a matter of law on three issues: (1) the choice of law to be applied in interpreting the contract; (2) whether the Consent Provision is a condition precedent to the formation and enforceability of the Contract, such that the stipulated failure to obtain the executed Consent rendered the contract null and void; (3) whether Houlihan could unilaterally waive the Consent Provision.

CS's predecessor, Cardiac Science Corporation (Cardiac), negotiated with Houlihan regarding Cardiac's engagement of Houlihan as Cardiac's investment banker. On August 25, 2015, the parties each signed the contract (Contract) setting forth the terms of Houlihan's engagement. Two months later, after Cardiac was acquired by new owners, Cardiac's new president sent Houlihan a letter denying that a contract had ever existed, and, if it had, terminating it. Houlihan responded, defended the contract and claimed it was owed professional fees which had not been paid. Cardiac filed its bankruptcy petition four days later.

The crux of the parties' disagreement centers on Paragraph 5 of the Contract (Consent Provision). Paragraph 5 provides:

1

> Agreement from Secured Lenders. Houlihan Lokey's obligations to provide the services described herein are contingent upon, and expressly subject to, the execution of a waiver, subordination or similar agreement, in form and substance satisfactory to Houlihan Lokey, pursuant to which DBS Bank Ltd., [Cardiac's] secured lender, consents to the performance of [Cardiac's] obligations under this Agreement, including, without limitation, [Cardiac's] payment of Houlihan Lokey's fees and expenses described in Section 3 and II thereof, free and clear of such lender's security interests in [Cardiac's] assets as included in Exhibit 8 of this Agreement.

Letter, ¶ 5. DBS Bank Ltd. (DBS) never provided the requested consent. CS argues that because the condition was never satisfied, no enforceable contract was formed.

Two other provisions are implicated. First, the Contract includes a choice of law provision. Paragraph 20 provides (in relevant part):

> Choice of Law; Jury Trial Waiver; Jurisdiction. This agreement shall be deemed to be made in New York. All disputes arising out or related to this agreement (whether based upon contract, tort or otherwise) shall be governed by, and construed in accordance with, the laws of the state of New York without regard to principles of conflicts of laws.

Letter, ¶ 20.

Second, the Contract includes a section that is explicitly subject to unilateral waiver. Paragraph 16, dealing with "Bankruptcy Court Approval," states: "The terms of this Section are solely for the benefit of Houlihan Lokey, and may be waived, in whole or in part, only by Houlihan Lokey. Letter, ¶ 16.

CS argues that the contract's choice-of-law provision should be ignored and that a significant contacts test compels the application of Wisconsin law. Further, CS argues that the Consent Provision is a condition precedent to contract formation, and because the contract is for Houlihan's services, a condition precedent to those services is a condition precedent to the existence of the contract.

2

Finally, CS argues that Houlihan cannot unilaterally waive the Consent Provision because the Consent Provision is not exclusively for Houlihan's benefit. Both parties had an interest in ensuring "that *the Debtor* was authorized to engage and pay an investment banker for the purpose of securing additional financing and selling its assets." CS points to Paragraph 16 of the Letter which includes a provision explicitly stating that "the terms of this Section are solely for the benefit of Houlihan Lokey, and may be waived, in whole or in part, only by Houlihan Lokey." From that, it infers that, when the Contract is silent, the parties intend to preclude the unilateral waiver of the Consent Provision.

Houlihan argues that the Contract's choice-of-law provision should be enforced and that the court should not presume the invalidity of the contract. Furthermore, Houlihan argues that courts enforce contractual choice-of-law provisions that do not contravene important public policies of the state whose law would otherwise be applicable.

Houlihan also argues that the plain language of the Contract states that Paragraph 5 expressly conditions Houlihan's performance. And, because the Contract includes an engagement date, the Consent Provision should not be interpreted as a condition on the entire engagement.

Finally, Houlihan argues that the Consent Provision was solely for its own benefit. Thus, it claims the right to unilaterally waive such provision. Houlihan also argues that the unilateral waiver provision in Paragraph 16 of the Contract is inapposite because the nature of that paragraph is entirely different.

*1. What law is to be applied in interpreting the Contract?*

The Seventh Circuit has stated: "A contract's choice-of-law provision may not apply if the contract's legality is fairly in doubt, for example, if the contract is unconscionable, or if there is some other issue as to the validity of the very formation of the contract." *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357 (7th Cir. 2015). In the absence of a contractual choice-of-law provision, *Sybron Transition Corp. v. Security Ins. Co. of Hartford*, 107 F.3d 1250 (7th Cir. 1997) describes Wisconsin's approach:

> In contract cases, the Supreme Court of Wisconsin utilizes a 'grouping-of-contacts approach," as embodied in the Restatement (Second) of Conflicts. Under Wisconsin law, '[r]elevant contacts include: [1] the place of contracting; [2] the place of negotiation of the contract; [3] the place of performance; [4] the location of the subject matter of the contract; and [5] the respective domiciles, places of incorporation and places of business of the parties.'

*Sybron Transition Corp.*, 107 F.3d at 1255 (quoting *Hystro Prods., Inc. v. MNP Corp.*, 18 F.3d 1384, 1387 (7th Cir. 1994) (footnote omitted)). The federal approach has been stated by *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161-62 (1946). To wit:

> But obligations, such as the one here for interest, often have significant contacts in many states so that the question of which particular state's law should measure the obligation seldom lends itself to simple solution. In determining which contact is the most significant in a particular transaction, courts can seldom find a complete solution in the mechanical formulae of the conflicts of law. Determination requires the exercise of an informed judgment in the balancing of all the interests of the states with the most significant contacts in order best to accommodate the equities among the parties to the policies of those states.

*Vanston Bondholder Protective Comm.*, 329 U.S. at 161-62.

Here, the parties dispute whether the Consent Provision was a condition precedent to contract formation or only to Houlihan's performance under the Contract. Under the *Life Plans* standard, this is an issue as to the validity of the very formation of the contract. Under either of

the choice-of-law approaches,[1] the court must consider what state has the most significant contacts with the contract. No argument has been put forth that Wisconsin does not have the most significant contacts.

In Wisconsin: "There is a distinction (often blurred) between a condition *under a contract* (where, though there is a binding contract, performance is delayed until the condition is satisfied) and a condition *to the making of a contract* (where there is no contract until the condition is satisfied)." *Kocinski v. Home Ins. Co.*, 433 N.W.2d 654, 658-59 (Wis. Ct. App. 1988). "An example of a condition under a contract is the 'subject to financing' clause commonly found in the type of real estate contract discussed in *Locke*." *Id*. As an example of a condition precedent to formation, *Kocinski* cited a case which included the following language:

> I realize there are several hurdles to cross. First, you must obtain the City's permission to build, as usual. Second, you must obtain a commitment from Aetna Life, which I understand to be substantially more than we will need for the second addition. Neither of these is a real obstacle, of course, but to protect your interests: I hereby recognize that if either the city does not grant permission to build, or if you fail to obtain a satisfactory commitment, that our 'Agreement between Owner and Architect' shall be null and void.

*Parkview Gen. Hosp., Inc. v. Eppes*, 447 S.W.2d 487, 489 (Tex. Civ. App. 1969). *Parkview Gen. Hosp.* has been approvingly quoted multiple times in Wisconsin, including by the Wisconsin Supreme Court. *See Fox v. Catholic Knights Ins. Soc.*, 665 N.W.2d 181, 189 (Wis. 2003) (quoting 447 S.W.2d at 490-91) ("Where the parties to the proposed contract have agreed that the contract is not to be effective or binding until certain conditions are performed or occur, no binding contract will arise until the conditions specified have occurred or been performed.").

Regarding, when a court will interpret an ambiguous condition as precedent to formation, the Seventh Circuit has stated:

---

[1] The Seventh Circuit has consistently declined to decide whether the forum's or federal choice of law rules apply in bankruptcy cases. *In re Jafari*, 569 F.3d 644, 648 (7th Cir. 2009). The parties agree that the court need not make that determination here.

5

> In its brief the appellant has devoted much space and cited many cases in support of the well established principle that where the performance of some act, or the occurrence of some event is necessary to the formation of the contract, the act or event is a condition precedent to the making of the contract. We have no criticism of that rule, but think it has no application to this case. Whether the act in question was necessary to the formation of the contract depends upon the interpretation of the offer. The defendant stresses the decision in *Campbell Inv. Co. v. Taylor*, 246 Ill. App. 433 (Ill. App. Ct. 1927), as a guide in the interpretation of the offer in the instant case. The offer in that case, however, was entirely different. It stated: "In the event you and your associates underwrite the amount required to remodel the Burlington Building, we will . . . . That offer clearly asked for action, instead of a promise to act, before the party making the offer would be bound. The court there properly so held. Here the offer, considered as a whole, asked, not for action within two weeks, but for a firm reply, a promise. We think this interpretation is clearly required by the language of the offer.

*Nat. Dairymen Ass'n v. Dean Milk Co.*, 183 F.2d 349, 352-53 (7th Cir. 1950).

In *Nat. Dairymen Ass'n*, the condition read as follows: "This offer is subject to the government's acceptance for export and if a permit is issued for us to ship on above basis, we will try to get you additional quantities at that time." *Id.* at 350. The offer explicitly asked for an "early reply;" it did not ask for action. *Id.* The court concluded that the condition as issue was precedent to rights and obligations, not effectiveness of the contract.

The issue has been generally stated as follows:

> Conditions precedent to performance under an existing contract arise from the terms of a valid contract and define an event that must occur before a right or obligation matures under the contract. In contrast, conditions precedent to the formation of a contract involve issues of offer and acceptance which preclude and determine the formation of a contract.

*M. West, Inc. v. Oak Park Mall, L.L.C.*, 234 P.3d 833, 843 (Kan. Ct. App. 2010) (citations omitted).

6

In this case the plain language of the Contract imposes a condition precedent to the formation of the contract. The only purpose of the Contract was to gain the performance of Houlihan, so conditioning all that performance on consent of DBS, conditioned the existence of the contract on that consent.

*2. Could Houlihan unilaterally waive the provision?*

It has long been established that a party can waive a condition precedent that is for its own benefit: "Conditions precedent may doubtless be waived by the party in whose favor they are made." *Jones v. United States*, 96 U.S. 24, 28 (1877).

In Williston on Contracts:

> Despite the notion suggested in the preceding section that a waiver must be the result of a mutual agreement of one sort or another, it is well settled that a contracting party may unilaterally waive a provision of the contract, including, as a general rule, any condition precedent which has been placed in the contract for that party's benefit. To the extent that mutual assent might be requisite, when the term waived is beneficial solely to the party relinquishing its rights, the other's assent may be implied; and thus, a waiver of contract requirements and conditions may not be made unilaterally when it would deprive the nonwaiving party of a benefit under the provision in question. Stated otherwise, only the beneficiary of a contract provision, including a condition precedent, has the power to excuse its failure or nonoccurrence.

13 Williston on Contracts § 39.24 (4th ed.)

Under Wisconsin law: "Such a waiver may not be made, however, where the waiver would deprive the non-waiving party of a benefit under the provision in question." *Goebel v. First Fed. Sav. And Loan Ass'n of Racine*, 266 N.W.2d 352 (Wis. 1978). When considering whether a provision is for the benefit of both parties, the Wisconsin Supreme Court court stated:

> We agree with defendants' contention that the provision in the contract, that it was to become null and void upon the failure to consummate the zoning revision by March 1st, is obviously for the protection of the sellers as well as the buyer. It is for the protection of the buyer because nonfulfillment of the zoning revision

7

cancels its liability on the contract and enables it to recover any prior payments made on the purchase price. It is for the protection of the sellers because such nonfulfillment also terminates their liability on the contract and leaves them free to immediately sell the premises to someone else.

*Id.* at 497.[2]

The *Godfrey* court also stated:

The most potent argument advanced by defendants is the fact that the contract between plaintiff and the individual defendants specifically authorized plaintiff to waive title defects, but is entirely silent with respect to its right to waive the consummation of the desired zoning revision. In a close case where the scales are somewhat evenly balanced between one interpretation and another, this might well be the decisive factor in arriving at the court's decision. We do not consider, however, that this is such a close case. Defendants have failed to point out any way in which the defendant sellers' protection is weakened in the slightest degree by the interpretation adopted by this court.

*Godfrey Co. v. Crawford*, 126 N.W.2d 495, 498 (Wis. 1964).

Here, a unilateral right to waive the condition would be equivalent to creating an indefinite option contract. Like in *Godfrey*, CS would be indefinitely subject to the initiation of the contract by Houlihan, extending its liability and constraining its ability to pursue alternative options. In short, if a condition is precedent to performance by *both* parties (because it is precedent to formation), it is difficult to see how that provision could be considered for the benefit of *only one party*. Therefore, it appears that because the Consent Provision is a condition precedent to formation, Houlihan does not have the right to unilaterally waive the condition.

Dated: August 22, 2016

ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE

---

[2] The apparent contradiction is these two *Godfrey* quotations is because the court is discussing whether the provision can be waived before (first quotation) or after (second quotation) a specific date.