**Dated: January 4, 2018**

**Hon. William V. Altenberger**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

IN RE: )
) Case No. 15-13766 (RDM)
CS ESTATE, INC., f/k/a CARDIAC )
SCIENCE CORPORATION, ) Chapter 11
)
DEBTOR. )

O P I N I O N

      The two issues before the Court involve the interpretation of the Debtor's confirmed

modified first amended Chapter 11 plan. (Doc. #660) ( confirmed plan). The matters before the

Court which raise the two issues are the motion of certain individual creditors (Individual

Creditors) to compel compliance with the confirmed plan  and payment of priority claims

(motion) and the litigation trustee's (Trustee) objection to the motion (objection).

      The Individual Creditors are former employees who, prior to confirmation, asserted

claims for wages and other sums earned during their employment, a portion of which are  priority

claims under § 507(a)(4) of the Bankruptcy Code. 11 U.S.C. §507(a)(4). At the same time the

Individual Creditors had claims asserted against them  arising out of alleged wrongdoing and

self- dealing while employees of the Debtor.  The Joint Combined Plan of liquidation and

disclosure statement, dated May 13, 2016, proposed by the Debtor and the Unsecured Creditors'

Committee, created a separate class (Class 5) for the claims held by the Individual Creditors

(referred to as "Former Management Claims"), providing that any and all claims were

subordinated to all other claims (including priority unsecured claims (Class 1) and general

unsecured claims (Class 3), with the exception of claims held by Affiliate companies (Class 6).

(Doc. #535, Art.IV, §4.5 at p. 19) (joint plan).[1] Subsequently, on June 20,2016, a first amended

joint combined plan of liquidation and disclosure statement was filed by the Debtor and the

Unsecured Creditors' Committee which again created a separate class (Class 5) for the claims

held by the Individual Creditors and subordinated the separate class to claims in classes 1,2,3,

and 4. (Doc. #580, Art. IV, § 4.5 at p. 20) ( amended joint plan).  That plan also provided that

any claims by  Former Management were disallowed pursuant to § 502(d) unless and until

Former Management had paid all amounts owing to the Debtor.

On August 12, 2016, in order to obtain a confirmable plan, the Debtor and the Unsecured

Creditors' Committee proposed a modified first amended plan, which divided the claims of the

Individual Creditors into two classes: one, priority unsecured claims for wages pursuant to §

507(a)(4), and two, unsecured claims for the balance of their total claims. (Doc. #660, Part 5,§ D

at p.8, Art. IV, § 4.5 at p. 20, & Art. XVII, pp. 39-41 ( modified first amended plan). This plan

was confirmed.

---

[1]Exhibit D lists the Class 5 Claims totaling $56,421,697.84, as follows: Arvind Manjegowda at $1,322,012.61; Dipali
Nanda at $304,423.08; Jayesh Patel at $17,000,000; Nishita Patel at $1,568,589.74; Sridhar Thyagarajan at $85,953.85; Thomas
Dietiker at $17,221,487.79; and Vinod Ramnani at $18,919,230.77.

After the plan was confirmed, the Individual Creditors' priority claims for wages were not

paid and they filed the motion to which the Trustee objected. While there are major

disagreements between the parties, the Trustee has now conceded that each of the Individual

Creditors have, pursuant to § 507(a)(4), priority claims in the allowable amount of $12,475, for a

total of $62,375. The first issue to be decided by the Court is whether the priority claims are

entitled to immediate payment, or whether those claims remain subject to subordination.

The focal point of the parties' dispute is Article XVII of the confirmed plan, entitled

"RESOLUTION OF CERTAIN ISSUES WITH INDIVIDUAL CREDITORS." This article,

consisting of ten sections, was added in its entirety in the modified first amended  plan, following

the parties' negotiations.  It deals with  the procedure to be followed for subordinating the

Individual Creditors' claims because of their alleged wrongdoings. The following sections are

relevant to this issue.

Section I of Article XVII provides:

> (a) the issues of whether the claims of the Individual Creditors are properly treated
> as set forth in Class 5 of the Plan and/or should be subordinated to other unsecured
> claims–whether pursuant to 11 U.S.C. §510(b), 510(c) or otherwise–or capped pursuant
> to 11 U.S.C. §502(b)(7)–are reserved until after confirmation of the Plan; (b) the Debtor,
> the OCC and the Litigation Trust fully reserve all of their rights, claims and arguments for
> subordination and the application of a statutory damages cap (collectively, the
> "Subordination Claims"); and (c) the Individual Creditors fully reserve all of their rights,
> defenses and arguments in opposition to such subordination and cap arguments
> (collectively, the "Subordination Defenses" and, together with the Subordination Claims,
> the "Subordination Issues").

Section II requires that the Subordination Issues be brought before the bankruptcy court no

sooner than ninety days following confirmation of the plan.

Section VIII of Article XVII, upon which the Individual Creditors place principal

reliance, provides as follows:

> To the extent the Individual Creditors hold claims that would constitute priority claims under 11 U.S.C. §507 but for the Debtor's separate classification of the Individual Creditors, and those claims are agreed or determined by the Bankruptcy Court to satisfy the requisites of 11 U.S.C. §507(a)(4), those claims will be paid in full up to the amount of the statutory cap codified at 11 U.S.C. §507(a)(4) - without deduction or offset - upon the occurrence of the Effective Date.[2]

Section IX governs the remaining non-priority portion of the Individual Creditors' claims, providing that to the extent that those claims or a portion thereof become allowed claims, those claims will be entitled to share *pro rata* with other allowed general unsecured claims in distributions made by the Trustee from any assets which are not subject to the liens of the secured lender.  The final provision of Article XVII, Section X, provides:

> The non-priority portion of the Individual Creditors' claims shall be considered "Disputed" Claims pursuant to the Plan, and the Litigation Trustee shall not be required to make any distribution on account of the Individual Creditors' claims unless and until such claims become Allowed Claims pursuant to the Plan.

The Individual Creditors contend that in order for the Debtor to obtain a confirmable plan the requirements of § 1129 of the Bankruptcy Code, 11 U.S.C. § 1129, had to be complied with, which includes § 1129(a)(9)(B), requiring payment of the priority portion of their unsecured claims upon the effective date of the plan.  The Trustee takes the position that § VIII, providing for payment of the claims up to the cap amount "without deduction or offset," does not include language protecting the priority claims from equitable subordination and that those claims remain subject to equitable subordination.  In response, the Individual Creditors assert that to equitably

---

[2]The confirmed plan defines the "Effective Date" to mean "a date selected by the Debtor, after consultation . . ., that is no more than fourteen (14) days following the date the conditions in Article XV are satisfied.  Article XV sets forth the conditions to Consummation, namely that the Confirmation Order become final and any and all necessary statutory, regulatory or antitrust approvals or consents be received by Debtor.  As required by the confirmation order,  a notice of the Effective Date of the plan was filed which disclosed the effective date to be August 29, 2016.

subordinate their claims would constitute a reduction or offset. As part of the Trustee's argument

in support of his objection and in response to the Individual Creditors' argument, the Trustee

contends that § 1129 (a)(9) allows the holder of a claim to agree to a different treatment of a

claim.

As can be seen from the quoted provisions above, there is language in the confirmed plan

which lends support to each side's position. At the hearing on the motion, no extrinsic evidence

as to the meaning of the plan's provisions was offered by either party. The Trustee argued that

the intent was to have both the priority unsecured portion of the claims and the unsecured portion

of the claims be subject to subordination and the priority unsecured portion of the claims were

not to be paid from the funds the Trustee holds.  Absent any proof of that subjective intent,

however, the Trustee's argument counts for naught.

In construing a confirmed plan of reorganization, courts apply general principles of state

contract law.  Those rules  were set forth in *In re UNR Industries, Inc*., 212 B.R. 295 (Bankr.

N.D. 1997), where the court stated:

> In general, a plan or reorganization should be analyzed according to the
> principles of state contract law.  *UNR Indus., Inc. v. Patterson Factory
> Workers,*176 5 B.R. 472, 474 (N.D.Ill. 1994).  Since the Plan was confirmed in
> Illinois, it is clear this action is governed by Illinois law.  In Illinois the rules for
> construction of contracts have been long established.  The primary goal is to give
> effect to the intention of the parties.  *See Allen Archery, Inc. v. Precision Shooting
> Equip., Inc.*, 865 F.2d 896, 899 (7th Cir. 1989); *Richards v. Liquid Controls
> Corp.*, 26 Ill.App.3d 111, 325 N.E. 2d 775, 781 (1975); *see also UNR Indus., Inv.
> v. Bloomington Factory Workers*, 173 B.R. 149, 157 (N.D. Ill. 1994).  The starting
> point in the search for the intention of the parties is the contract itself.  *Matter of
> Lefkas Gen. Partners*, 112 F.3d 896, 901 (7th Cir. 1997)(citing *Atlantic Mut. Ins.
> Co. v. Metron Eng'g & Constr. Co.*, 83 F.3d 897, 898 (7th Cir. 1996)(citation
> omitted)).  If the plain language of a contract is unambiguous then the express
> provisions govern and there is no need for further inquiry into the intention of the
> parties.  *Id*.; *Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738, 743 (7th Cir. 1996)

citing *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 456 (7th Cir.)(internal citations omitted), *Cert. Denied*, 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991)); *P.A. Bergner & Co. of Ill. v. Lloyds Jewelers, Inc.*, 112 Ill.2d 196, 97 Ill.Dec. 415, 518, 492 N.E.2d 1288, 1291 (1986); *see Bloomington Factory Workers*, 173 B.R. at 157.  However, if the contract is ambiguous then "the Court must go on to declare [the contract's] meaning." *Taracorp*, 73 F.3d at 743.

212 B.R. at 301.[3]  The rule that a confirmed plan must be read as a whole has often been applied by courts.  *In re Shenango Group Inc.*, 501 F.3d 338 (3d Cir. 2007);   *Hills Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581 (9th Cir. 1993); *In re Craig County Hospital Authority*, 572 B.R. 340 (Bankr.N.D. Okla. 2017); *In re Linn Energy, LLC,* 576 B.R. 532 (Bankr.S.D. Texas 2017).   Notwithstanding that rule, however, if both a general and a specific provision relate to the same subject, the specific provision controls.  *Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 984 F.2d 223, 227 (7th Cir. 1993); *Appliance Now, Inc.*, 568 B.R. 843 (Bankr.M.D.Fla. 2017); *In re 18th Avenue Realty, Inc.*, 2010 WL 1849403 (Bankr.S.D.N.Y. 2010).

This Court would begin its analysis by noting that the doctrine of equitable subordination alters the order of payments to creditors. It does not necessarily mandate there be a reduction in the amount being paid to creditors whose claims are equitably subordinated. However, when the doctrine is applied to claims in bankruptcy there normally is a reduction because a bankruptcy estate does not have enough assets to pay subordinated claims after first paying claims that are paid before the subordinated claims. *See Matter of Lifschultz Fast Freight*, 132 F.3d 339 (7th Cir.1997).

---

[3]While the court in *UNR Industries* applied principles of Illinois state contract law, Wisconsin state contract law is substantially similar to Illinois law. *See Tufail v. Midwest Hospitality, LLC*, 348 Wis.2d 631 (2013); *Flexscripts Administrators, LLC v. Herr Foods, Inc.*, 2013 WL 5178166 (E.D. Wis. 2013).

Turning to the parties' positions, the Individual Creditors assert their claim will be reduced by equitable subordination. The Trustee, in his objection and at oral argument on the motion, did not deny that the Individual Creditors' claims would be reduced. Rather he argues that notwithstanding that result, the language of § VIII does not mention equitable subordination and therefore the Individual Creditors' priority claims for wages are subject to equitable subordination.

Article XVII of the confirmed plan clearly states that the issues of whether the claims of the Individual Creditors should be subordinated are fully reserved. It then goes on to set out a procedure for resolving any disputes and in § VIII to carve out special treatment for priority claims under §507. It concludes with a provision that the non-priority portion of the Individual Creditors' claims are to be considered "disputed" and that there was to be no distribution on account of the Individual Creditors' claims until such claims become allowed claims.

Another rule of construction applicable to the interpretation of confirmed plans, of particular significance here, is that the plan should be interpreted as consistent with the Bankruptcy Code. *In re Flying Star Cafes, Inc.*, 568 B.R. 129 (Bankr. D. N.M. 2017); *In re Forklift LP Corp.*, 363 B.R. 388 (Bankr.D.Del. 2007). Section 1129(a) of the Bankruptcy Code which provides, in applicable part here:

> (a) The court shall confirm a plan only if all of the following requirements are met:
> * * *
> (9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan shall provide that –
> * * *
> (B) with respect to a class of claims of a kind specified in section [507(a)(4)], each holder of a claim of such class will receive--
> ***
> (ii) if such class has not accepted the plan, cash on the effective

7

of the plan equal to the allowed amount of such claim.

Under this provision, a priority wage claimant who has not accepted the plan is entitled to receive

cash equal to the amount of the claim on the effective date of the plan.

This Court rejects the Trustee's contention that the Individual Creditors, by failing to

pursue their initial objections to the modified first amended plan, "agreed," within the meaning

of §1129(a)(9),  to having the priority portion of their claims treated in a manner inconsistent

with § 1129(a)(9)(B). The term "has agreed" has been interpreted as requiring an affirmative

consent and not merely a failure to object.  *In re Jenkins*, 184 B.R. 488, 492 n.8 (Bankr.E.D.Va.

1995); *In re Randolph*, 273 B.R. 914, 918 (Bankr.M.D.Fla. 2002)(interpreting nearly identical

language under § 1322(a)(2).

There is more than just that rule of construction at play here, however.  In the Order

confirming the modified first amended plan, entered August 12, 2016, the bankruptcy court

found that the DEBTOR had established that the plan complied with all relevant provisions,

including section 1129(a) of the Bankruptcy Code.  The Debtor and the Committee, having

obtained confirmation on that premise, cannot now profess a contradictory interpretation.

Equally elucidative here is a third rule of construction that a confirmed plan should be

interpreted in light of circumstances and the principal purpose of the plan.  *In re Hill*, 572 B.R.

793 (Bankr.N.D.Ga. 2017); *In re Hamilton*, 2017 WL 1533382, at *4.  The differences between

the joint plan and amended joint plan as compared to the confirmed plan support the position of

the Individual Creditors. The joint plan and the amended joint plan did not recognize the priority

claims of the Individual Creditors. Neither plan provided for separate treatment of  the types of

claims held by the Individual Creditors. Both provided for subordination of the claims.

8

The modified first amended plan, resulting from negotiations between the parties, consistent with § 510(c), implemented a process for resolution of the subordination issues, requiring the Trustee to bring an action in the bankruptcy court and reserving all rights and defenses the Individual Creditors had in opposing the Trustee's subordination claims.  Pursuant to §510(c) of the Bankruptcy Code, the court may, after notice and a hearing, subordinate all or part of an allowed claim to another allowed claim.  The modified first amended plan also recognized the Individual Creditors' priority claims, dividing their claims into priority and general, unsecured claims and providing for specific treatment of their claims as priority unsecured claims and non-priority unsecured claims.

Applying those rules of construction to the confirmed plan at issue here, the Court determines that it was the intent of the Debtor and the Unsecured Creditors' Committee that  the Individual Creditors' priority claims would not be subject to equitable subordination.  Of primary significance is § VIII, which plainly and unambiguously provides for the full payment of wage claims as authorized by § 507(a)(4), without deduction or set off upon the occurrence of the effective date of the plan.  Because that section specifically deals with the priority claims, it is to be given greater weight than the more general provision, § I, addressing subordination of the "claims" of the Individual Creditors.  Given the broad qualification in §VIII that the priority claims, once agreed to or determined by the court to meet the requirements of §507(a)(4), that the claims would be paid "in full" up to the amount of the statutory cap "without deduction or offset," the Court agrees with the Individual Creditors' position that if the priority claims were intended to also be subject to subordination, it should  have unequivocally so provided.

This interpretation is supported by the fact that Article XVII contemplates a dispute

9

resolution procedure  to be initiated no sooner than 90 days after the confirmation date, yet § VIII

contemplates payment of the priority claims upon the occurrence of the effective date. It would

not be possible to pay the priority claims as required by § VIII, if the challenges to those claims

were only to begin 90 days following confirmation.  The confirmed plan fixes the effective date

of the plan as being no more than 14 days following its consummation, an event that comes on

the heals of confirmation.  It is important to note here that § X of the confirmed plan provides

that the non-priority portion of the Individual Creditors' claims shall be considered "disputed"

claims and clarifies that the Trustee is not required to make any distribution on those claims until

those claims become "Allowed Claims."

Thus, read as a whole, the modified first amended plan sets apart and accords

significantly different treatment to the priority claims of the Individual Creditors.  The claims of

the Individual Creditors total $56,421,697.84.  The priority claims asserted by the movants here

total only $62,375.  Interpreting the confirmed plan as carving out the priority claims causes no

disruption to its overall scheme.  As indicated in Part 5,§ D of the confirmed plan, the Individual

Creditors have numerous and varied claims against the Debtor pursuant to employment

agreements and restricted stock agreements.  Interpreting the word "claims" in the confirmed

plan to encompass the differing kinds of claims held by the Individual Creditors, and not to refer

to the dichotomy of priority and unsecured claims, is the only interpretation that reconciles all of

the provisions of the confirmed plan.  Those claims, to the exclusion of the priority claims, will

remain subject to subordination.

The second issue before the Court involves whether the Individual Creditors have a right

to payment of their priority claims from the funds currently being held by the Trustee.  The

Trustee asserts that even if the priority claims of the Individual Creditors are not subject to

equitable subordination, those claims cannot be paid as payment is prohibited by Article XIII of

the plan, governing the means for its implementation. Specifically the Trustee asserts that the

only funds he currently holds of approximately $3.4 million, represent a carve out of the

collateral of the Debtor's pre-petition lender, which can not be used to pay insiders' claims.

Section VII of Article XVII of the plan provides that Individual Creditors' claims will not  be

paid from cash deposited into the litigation trust pursuant to § 13.1(I), regardless of the resolution

of the subordination issues. Section 13.1(I) provides in part as follows:

> On the Effective Date, the Debtor shall deposit all remaining cash (estimated to be
> approximately $2,800,000 to $3,500,000 depending on how many Administrative Claims
> and Professional Claims are Allowed and paid prior to the Effective Date) into the
> Litigation Trust for the benefit of the Beneficiaries and the holders of Allowed (or to be
> Allowed) Administrative Claims, Professional Claims, and Allowed Priority Unsecured
> Claims.

The Trustee argues this language means that while this cash can be used to pay other priority

unsecured claims, it can't be used to pay the priority unsecured claims of the Individual

Creditors.

Again reading § VII of Article XVII together with §13.1(I) of Article XIII,  the payment

of "Priority unsecured claims" is clearly provided for.   The Individual Creditors hold "Priority

Unsecured  Claims" for wages. Therefore the Individual Creditors' priority unsecured claims can

be paid  from the carved out cash held by the Trustee.  It is only the unsecured non-priority

portion of their claims that are not payable from that cash.

For these reasons the Individual Creditors' motion to compel compliance with the confirmed plan of liquidation and payment of priority claims should be allowed. See order entered this date.

# # #